IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JESSIE ROBERTA WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18CV351 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Jessie Roberta Wilson ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.   PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits in July of 2014, alleging a disability onset date of December 1, 2010. (Tr. at 15, 188-194.)[1] Her application was denied initially (Tr. at 112-120) and upon reconsideration (Tr. at 122-129). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 130-131.) Plaintiff, along with her representative and an impartial vocational expert,

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #8].

attended the subsequent hearing on July 20, 2016. (Tr. at 31.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act from her alleged onset date of December 1, 2010 through December 31, 2015, the date last insured. (Tr. at 26.) On February 28, 2018, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-5.)

## II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

## III.   DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" during the period from her alleged onset date of December 1, 2010 through her date last insured of December 31, 2015. Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> post-traumatic stress disorder, depressive disorder, and bilateral knee osteoarthritis.

(Tr. at 18.) The ALJ found at step three that these impairments did not meet or equal a disability listing. (Tr. at 19.) Plaintiff does not challenge this listing determination at step three. The ALJ then assessed Plaintiff's RFC and determined that she:

> had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c), except that she should only frequently crouch. The claimant can perform unskilled simple, routine, and repetitive tasks that involve work primarily with things and not people.

(Tr. at 20.) Based on the RFC determination, the ALJ found under step four of the analysis that Plaintiff could not perform her past relevant work. (Tr. at 24.) However, the ALJ

determined at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in the national economy. (Tr. at 25-26.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 26.)

Plaintiff now argues that the ALJ erred in two respects. First, citing Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), Plaintiff contends that "[t]he ALJ's mental RFC finding is contrary to law and not supported by substantial evidence, as it is improperly vague and does not account for all the mental limitations documented by the record." (Pl.'s Br. [Doc. #11] at 10.) Specifically, Plaintiff contends that the RFC fails to encompass both her moderate limitations in concentration, persistence, and pace and her moderate limitations in social functioning. (Id. at 13.) Second, Plaintiff contends that the ALJ's assessment of Plaintiff's subjective complaints is "generally defective" because of the purported Mascio error and more "specifically" because the ALJ "neglected to consider Plaintiff's strong work history in his assessment." (Id. at 18.) The Court considers these contentions in turn.

A. Moderate Limitations in Concentration, Persistence, or Pace and Social Functioning

Plaintiff first contends that the ALJ's determination is not supported by substantial evidence because the RFC "only describes a person limited to simple, routine and repetitive tasks that involve working primarily with things and not people," which Plaintiff contends fails to account for her moderate limitations in concentration, persistence, and pace and her moderate limitations in social functioning. (Pl.'s Br. at 13.) As to this contention, the Court notes that at step three of the sequential analysis, the ALJ determined that Plaintiff has moderate difficulties in concentration, persistence, or pace and moderate difficulties in social

6

functioning.  (Tr. at 20.)  In <u>Mascio v. Colvin</u>, the Fourth Circuit noted that where moderate

limitations in concentration, persistence, or pace are reflected at step three, the ALJ should

address those limitations in assessing the RFC or should explain why the limitations do not

affect the claimant's ability to work.  <u>Mascio</u>, 780 F.3d 632.  The Fourth Circuit specifically

held that

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in
> concentration, persistence, or pace at step three does not translate into a
> limitation in Mascio's residual functional capacity.  For example, the ALJ may
> find that the concentration, persistence, or pace limitation does not affect
> Mascio's ability to work, in which case it would have been appropriate to
> exclude it from the hypothetical tendered to the vocational expert.  But because
> the ALJ here gave no explanation, a remand is in order.

<u>Id.</u> (internal citation omitted).  However, as previously noted in other cases in this District, the

Fourth Circuit's decision in <u>Mascio</u>

> does not broadly dictate that a claimant's moderate impairment in
> concentration, persistence, or pace always translates into a limitation in the
> RFC. Rather, <u>Mascio</u> underscores the ALJ's duty to adequately review the
> evidence and explain the decision. . . .
>
> An ALJ may account for a claimant's limitation with concentration, persistence,
> or pace by restricting the claimant to simple, routine, unskilled work where the
> record supports this conclusion, either through physician testimony, medical
> source statements, consultative examinations, or other evidence that is
> sufficiently evident to the reviewing court.

<u>Tolbert v. Colvin</u>, 1:15CV437, 2016 WL 6956629, at *8 (M.D.N.C. Nov. 28, 2016) (finding

that RFC limitations to "simple, routine, repetitive tasks with simple, short instructions, in a

job that required making only simple, work-related decisions, involved few workplace changes,

and required only frequent contact with supervisors, co-workers, or the public" sufficiently

accounted for a claimant's moderate limitations in concentration, persistence, or pace in light

of the ALJ's explanation throughout the administrative decision) (quoting Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015)).

In the present case, as noted above, the ALJ found moderate difficulties in concentration, persistence, or pace and moderate difficulties in social functioning. (Tr. at 20.) When later assessing Plaintiff's RFC, the ALJ determined that Plaintiff would be limited to unskilled simple, routine, and repetitive tasks that involve working primarily with things and not people. (Id.) Thus, the ALJ included specific limitations to not only simple and routine tasks, but also tasks that involve working primarily with things and not people. (Id.) Moreover, the ALJ here sufficiently explained why Plaintiff's limitations in concentration, persistence, or pace and social functioning were accounted for by the RFC.

i. Concentration, Persistence, or Pace

The ALJ's RFC determination properly accounted for Plaintiff's moderate limitations in concentration, persistence, or pace. First, in determining Plaintiff's mental RFC the ALJ specifically relied upon the medical opinion of consulting psychologist Ernest K. Akpaka, Ph.D. (Tr. at 22, 1121.) After examining Plaintiff on September 25, 2014, Dr. Akpaka concluded that Plaintiff's "mental ability to perform tasks that require sustained concentration and persistence and tolerate stress associated with day-to-day regular work activity is significantly limited by her mood symptoms and her estimated low average intellectual functioning." (Tr. at 1119, 1121.) Nevertheless, Dr. Akpaka also concluded that Plaintiff was still "capable of understanding, retaining and following simple instructions, and sustaining enough attention to perform simple repetitive tasks and routine." (Tr. at 22, 1121.) This alone provides substantial evidence for the ALJ's decision to limit Plaintiff to only unskilled, simple,

routine, and repetitive tasks.[4] (Id.) See, e.g., Tolbert, 2016 WL 6956629, at *8 (concluding that "[a]n ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion . . . through . . . consultative examinations").

Second, the non-examining state agency psychological consultants also provide substantial evidence for the ALJ's RFC determination as it relates to Plaintiff's moderate limitations in concentration, persistence, or pace. (Tr. at 88-89, 105-06.) Both experts—Ken Wilson, Psy.D. and W.W. Albertson, Ed.D.—explained that Plaintiff was moderately limited in concentration, persistence, or pace. (Tr. at 88, 105-106.) Both experts explained further that Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods, and in her ability to maintain a normal workday and workweek without interruptions from psychologically-based symptoms and without an unreasonable number and length of rest periods. (Id.) Nevertheless, the consultants further concluded that, while Plaintiff "may have some occasional deficits" in sustaining concentration, she was still "capable of carrying out instructions and has the ability to maintain attention & concentration for 2 hours at a time as required for the completion of work-related tasks." (Tr. at 88, 106.) Dr. Albertson also concluded that Plaintiff "[a]ppear[ed] capable of performing simple, routine tasks." (Tr. at 106.) This, too, is substantial evidence in support of the ALJ's mental RFC

---

[4] Plaintiff emphasizes that Dr. Akpaka found that her "mental abilities, to perform sustained concentration and persistence and tolerate the stress associated with day-to-day work activity, [are] significantly limited." (Pl.'s Br. at 14.) However, Dr. Akpaka also stated that Plaintiff "is capable of understanding, retaining and following simple instructions, and sustaining enough attention to perform simple repetitive tasks and routine." (Tr. at 1121.) Dr. Akpaka thus found that while Plaintiff was significantly limited in her ability to perform jobs that involved more than simple, repetitive tasks and routine, she could perform jobs that involved only simple, repetitive tasks and routine.

determination as to Plaintiff's difficulties in concentration, persistence, or pace. See, e.g., Sizemore v. Berryhill, 878 F.3d 72, 81 (4th Cir. 2017) (concluding that opinions of non-examining state agency physicians may serve as substantial evidence that, despite moderate limitations in concentration, persistence, or pace, a claimant could stay on task).[5]

Third, the ALJ also relied on Plaintiff's wide range of activities of daily living, noting that "[d]espite her complaints, the overall record reflects that the claimant is able to perform her activities of daily living, interact with her family, and concentrate," further supporting the ALJ's determination that Plaintiff is not limited in concentration, persistence, or pace beyond those restrictions incorporated in the mental RFC determination. (Tr. at 23.) With respect to activities of daily living, the ALJ noted that Plaintiff was able to drive a car, watch television, tend to her personal care without assistance, prepare simple meals, perform household chores, shop in stores, attend church, plant flowers, do other yard work, wash dishes, clean, and launder clothes, and the ALJ also noted that Plaintiff reported doing puzzles and staining/redoing furniture. (Tr. at 19, 23, 240-244, 1120.) See Gaffney v. Berryhill, 2018 WL 4434935 at *5 (M.D.N.C. Sept. 10, 2018) ("[I]n this case, as explained above, the ALJ considered Plaintiff's mental limitations at length and set out the reasons for the RFC determination, ultimately relying on Plaintiff's activities of daily living, mental health treatment

---

[5] The ALJ in this case gave the non-examining state agency psychological consultant opinions "little weight." (Tr. at 24.) However, the ALJ went on to explain that this was only because she concluded that the "claimant was more limited than previously determined regarding her social interactions," where the state agency physicians had found no limitations in social interactions. (Id. at 24, 88, 106.) Consequently, there is no reason to believe that the ALJ here had any intention other than adopting Drs. Wilson and Albertsons' other conclusion that Plaintiff could sustain attention and concentration sufficient for the completion of work-related tasks. See, e.g., Owens v. Berryhill, No. 1:17CV43, 2018 WL 851380, at *9 n.8 (M.D.N.C. Feb. 13, 2018).

records, and the opinion of Dr. Cyr-McMillon in setting Plaintiff's RFC with respect to her mental limitations.").

Fourth, the ALJ further supported her mental RFC determination by pointing to mental health treatment notes that showed no more than mild to moderate symptoms, including GAF scores of 60 and 70.[6]  (Tr. at 21-22; see, e.g., Tr. at 878 (VA mental status examination showing unimpaired concentration and normal memory and intelligence, with GAF of 60); 907 (VA mental status examination showing GAF of 70, which the ALJ noted "means that she demonstrated only mild symptoms in social, occupational, or school functioning according to the Diagnostic and Statistical Manual of Mental Disorders"); 939-47 & 1009-20 (mental health provider consistently finding normal relationship skills, organized/logical thoughts, and normal cognition).)

Fifth, the ALJ additionally supported her mental RFC determination by pointing to evidence demonstrating that Plaintiff's mental condition improved with psychotherapy and medications. (Tr. at 23.)  For example, the ALJ noted that on January 27, 2015, Plaintiff reported "doing fairly well" regarding her PTSD, with reduced stress after her son returned from Afghanistan, no depression, and only a few nightmares.  (Tr. at 23, 1679.)

---

[6] The GAF is a scale ranging from zero to one hundred used to rate an individual's psychological, social, and occupational functioning. See Am. Psychiatric Assoc, Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV") 32–34 (4th Ed., Text Revision 2000). Scores between 61 and 70 indicate mild symptoms or some difficulty in social, occupational, or school functioning. Id. Scores between 51–60 indicate moderate symptoms or moderate difficulties in social, occupational, or school functioning. Id. Although the more recent edition of the DSM abandoned the use of GAF scoring, the Social Security Administration has instructed ALJs to continue to consider GAF scores as medical opinion evidence in tandem with "all the evidence about a person's functioning." Sizemore, 878 F.3d at 82 (quoting Emrich v. Colvin, 90 F. Supp. 3d 480, 492 (M.D.N.C. 2015)).

Thus, the ALJ provided an extensive analysis of the record with respect to Plaintiff's mental limitations, and the ALJ fully explained the basis for the RFC determination, including the basis for concluding that Plaintiff remained capable of performing simple, routine, repetitive tasks despite her limitations in concentration, persistence, or pace. That determination is supported by substantial evidence for all of the reasons set out above.

      ii.     Social Functioning

At step three, the ALJ also concluded that Plaintiff had moderate difficulties in social functioning. (Tr. at 20.) Specifically, the ALJ noted that "the claimant reported irritability and anger (Exhibit 5E, 5F & 7F). While she is able to shop in stores, she reported going during off hours when fewer people are there. She sits in the back of church where there are fewer people." (Id.) Citing Mascio, Plaintiff contends that her moderate limitations in social functioning are not accounted for in the RFC. (Pl. Br. at 15.) For the following reasons, the Court does not find this argument persuasive.

In assessing Plaintiff's social functioning, the ALJ noted that Dr. Akpaka found that Plaintiff's "mood may impede her ability to relate to others and perform a consistent work schedule." (Tr. at 22, 1211.) The ALJ also disagreed with the non-examining state agency psychological consultants who concluded that Plaintiff had no limitation in social functioning. (Tr. at 24, 88, 106.)[7] The ALJ consequently concluded that Plaintiff was limited to work

---

[7] Plaintiff contends that rather than rejecting the state agency psychological opinions on the basis of her "own lay opinion," the ALJ "could have recontacted the consultative psychological examiner for clarification of his opinion, arranged for another consultative examination, scheduled a review of the record and obtained testimony from a medical expert, or sent the updated case record file back to the State Agency for review of the expanded case record by an Agency psychological consultant." (Pl.'s Br. at 16.) However, none of this was necessary or required here because the ALJ did not rely on her own lay opinion, but instead relied on the consultative examiner's evaluation and opinion and the other evidence of record, as discussed above.

dealing primarily with things rather than people. (Tr. at 20.) This is a common formulation used by ALJs to address impairments in social functioning, and is not impermissibly vague as Plaintiff contends. Patton v. Astrue, No. 1:10CV211, 2011 WL 6300361, at *7 (W.D.N.C. Dec. 16, 2011) (collecting cases). Consequently, the ALJ did not ignore Plaintiff's problems with social functioning, but instead accounted for them in the RFC.

The ALJ also pointed to substantial evidence that Plaintiff's social limitations, including her anger and irritability and her need to limit her contact with others, are adequately accounted for as so long as she works primarily with things rather than people. For example, the ALJ referenced Plaintiff's testimony regarding irritability and anger. (Tr. at 20.) In that testimony, Plaintiff admits that as long as she takes her medication, she has no problem with anger. (Tr. at 56.) Additionally, the ALJ concluded that Plaintiff had moderate limitations in social functioning because she shopped in stores during off hours and she sat in the back of church. (Tr. at 20.) This was so Plaintiff would be around fewer people. (Id.) In limiting Plaintiff to working primarily with things rather than with people, the ALJ also accommodated this limitation. Thus, the Court concludes that the ALJ sufficiently explained the basis for the RFC determination, including that Plaintiff remained capable of performing simple, routine, repetitive tasks that involve working primarily with things rather than people, to accommodate Plaintiff's limitations in social functioning. That determination is supported by substantial evidence for all of the reasons set out above.

Finally, the Court notes that at no point does Plaintiff explain what additional limitation she believes she is entitled to in the RFC determination. Instead, she simply asserts that a

remand is in order because the ALJ failed to reconcile her moderate limitations in concentration, persistence, or pace and social functioning with a mental RFC limiting her to simple, routine, repetitive tasks, that involved working primarily with things rather than people. However, for all of the reasons discussed above, the Court concludes that the ALJ provided a sufficient explanation as to why Plaintiff's moderate limitations were accounted for in the RFC. Therefore, the Court finds that Plaintiff's first claim does not require remand.[8]

B. Symptom Evaluation

Plaintiff next contends that substantial evidence fails to support the ALJ's evaluation of her subjective complaints. (Pl.'s Br. at 18-21.) Under the applicable regulations, the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) ("SSR 16-3p"); see also 20 C.F.R. § 404.1529.[9] In Craig v. Chater, the Fourth Circuit addressed the two-part test for evaluating a claimant's statements about symptoms. Craig, 76 F.3d at 594-95. "First, there must be objective medical

---

[8] Plaintiff argues that, even if she were not disabled throughout the disability period, she may be entitled to a closed period of benefits because the ALJ stated that her mental condition improved with treatment. (Pl.'s Br. at 16-17.) Plaintiff's argument is not compelling because the ALJ demonstrated—as discussed herein—that Plaintiff did not suffer from a disabling mental condition during any period between her alleged onset date and the date last insured. (Tr. at 21-22.)

[9] Social Security Ruling 16-3p eliminated use of the term "credibility" in reference to symptom evaluation, effective March 28, 2016. The Social Security Administration has clarified that Social Security Administration adjudicators "will apply this ruling when we make determinations and decisions on or after March 28, 2016" and that "[w]hen a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review." Soc. Sec. Ruling 16-3p, 2017 WL 510304, at *1, 13 n.27 (Oct. 25, 2017). Because the ALJ's decision in this case was issued on November 28, 2016, after March 28, 2016, Social Security Ruling 16-3p applies to it.

evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.' " Id. at 594 (emphasis omitted) (citing 20 C.F.R. §§ 416.929(b), 404.1529(b)). If the ALJ determines that such an impairment exists, the second part of the test then requires him to consider all available evidence, including Plaintiff's statements about her pain, in order to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Craig, 76 F.3d at 595.

This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit her ability to perform basic work activities. Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings" Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. § 404.1529(c)(3):

> (i) [Plaintiff's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [her] pain or other symptoms;
>
> (v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [her] pain or other symptoms;
>
> (vi) Any measures [Plaintiff] use[s] or [has] used to relieve [her] pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

Where the ALJ has considered these factors and has heard Plaintiff's testimony and observed her demeanor, the ALJ's determination is entitled to deference. See Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

In the present case, the ALJ determined that Plaintiff's "medically determinable impairments," including post-traumatic stress disorder, depressive disorder, and bilateral knee osteoarthritis, "could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. at 92.) Therefore, Plaintiff's challenge hinges on step two of the Craig analysis.

It is undisputed that at step two of the analysis, the ALJ should not reject a claimant's statements "about the intensity and persistence of [her] pain or other symptoms or about the effect [her] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [her] statements." 20 C.F.R. § 404.1529(c)(2). Thus, "subjective evidence of pain intensity cannot be discounted solely based on objective medical findings." Lewis v. Berryhill, 858 F.3d 858, 866 (4th Cir. 2017). However, it is also undisputed that a plaintiff's "symptoms, including pain, will be determined to diminish [her] capacity for basic work activities [only] to the extent that [her] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). Thus, objective medical evidence and other evidence in the record are "crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work," and

"[a]lthough a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Hines, 453 F.3d at 565 n.3 (quoting Craig, 76 F.3d at 595); see also SSR 16-3p ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities . . . ."). According to the regulatory guidance:

> If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities . . . . In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities . . . .

SSR 16-3p.

In the present case, a thorough review of the ALJ's decision and the record as a whole reveals that the ALJ properly considered objective medical evidence and other evidence, and explained that determination in the decision. In evaluating the evidence, the ALJ specifically identified multiple reasons supporting her determination.

First, the ALJ pointed to objective medical evidence in support of her decision to partially discount Plaintiff's subjective complaints. (Tr. at 21-24.) For example, on March 3, 2011, Plaintiff's sensation was intact throughout and her gait was normal. (Tr. at 21, 924-925.)

On April 11, 2011, Plaintiff demonstrated a GAF score of 70, meaning only mild symptoms in social, occupational, or school functioning. (Tr. at 21-22, 907.) On January 26, 2012, she demonstrated a calm mood, an appropriate affect, and normal memory, along with a GAF score of 60, meaning only moderate symptoms in social, occupational, or school functioning. (Tr. at 22, 878-879.) The ALJ also pointed out that treatment notes generally indicated appropriate affect. (Tr. at 22, 939-957, 1030.) On September, 25, 2014, Plaintiff demonstrated to Dr. Akpaka a coherent, logical, and goal directed thought process, she was oriented, and her memory was fair. (Tr. at 22, 1120.) On October 13, 2014, Plaintiff demonstrated normal mood and affect, the ability to tandem, heel, and toe walk, no muscle tenderness, and normal sensation. (Tr. at 22, 1128-1129.) She was able to manipulate objects with her hands and raise her arms overhead. (Tr. at 23, 1128.) On July 2, 2015, imaging of Plaintiff's cervical spine showed only mild anterior osteophytosis and a later imaging of her shins was normal. (Tr. at. 23, 1178, 1699.) On January 25, 2016, imaging of her right hand and wrist showed no abnormalities. (Tr. at 23, 1731.) On June 28, 2016, she exhibited mild right knee pain but her gait was normal and non-antalgic. (Tr. at 23, 1782.) On August 1, 2016, imaging showed minimal patellofemoral degenerative changes in Plaintiff's left knee and minimal to mild patellofemoral changes in her right knee. (Tr. at 23, 1823-24.)

In addition, the ALJ concluded that "[t]he overall medical record reflects mental health impairments have improved with psychotherapy and medications." (Tr. at 23.) For example, on January 27, 2015, Plaintiff was "reportedly doing fairly well" regarding her PTSD, she denied any depression, and she reported reduced stress after her son returned from Afghanistan. (Tr. at 23, 1679.) The ALJ also noted that "[w]hile [Plaintiff] complains of back

[pain] related to her knees and back, these complaints are not consistent (Exhibit 11F)" because "[d]iagnostic imaging of her knees shows only mild degenerative joint disease." (Tr. at 23, 1814-1815, 1823-1824.)

The ALJ also pointed out that "[d]espite her complaints, the overall record reflects that the claimant is able to perform her activities of daily living, interact with her family, and concentrate, as demonstrated by her ability to watch television and drive a car." (Tr. at 23, 243-244.) With respect to these types of activities of daily living, the ALJ noted that Plaintiff was able to tend to her personal care without assistance, prepare simple meals, perform household chores, drive a car, shop in stores, watch television, attend church services, plant flowers and do other yard work, wash dishes, clean, and launder clothes. (Tr. at 19, 240-244, 1120.) The ALJ also described Plaintiff's treatment as "conservative." (Tr. at 23.) For example, the ALJ noted that Plaintiff testified that she takes over-the-counter pain medication for her knee and uses sports cream. (Tr. at 21, 39-40.)

Thus, the ALJ's decision reflects that the ALJ assessed Plaintiff's subjective complaints in light of the objective medical findings, her admitted activities of daily living, and the conservative nature of her medical care, and this determination is supported by substantial evidence in the record.

Plaintiff's arguments to the contrary are not persuasive. First, Plaintiff does not challenge any of the above-mentioned findings, but instead contends generally that the arguments raised in her first claim are "also an attack on the ALJ's credibility finding." (Pl.'s Br. at 19.) However, the Court has considered Plaintiff's first claim, as discussed at length above, and has concluded that the ALJ's determination of Plaintiff's mental RFC is supported

by substantial evidence. Consequently, Plaintiff's general reference to her "above arguments" would not provide any basis to challenge the ALJ's determination.

Second, the only specific contention Plaintiff does raise is an assertion that the ALJ failed to consider her extensive work history. (Id.) A claimant's prior work record is relevant to an assessment of subjective symptoms, but it is only one factor among many. See 20 C.F.R. § 404.1529(c)(3) (requiring ALJ to consider "information about [a claimant's] prior work record" in assessing symptoms). Thus, "while a long work history may be a factor supporting credibility, it is not controlling." Maner v. Colvin, No. CA 1:12-2969-RBH, 2014 WL 4656383, at *5 (D.S.C. Sept. 17, 2014); see also Wavercak v. Astrue, 420 Fed. Appx. 91, 94 (2nd Cir. 2011) ("That [the claimant's] good work history was not specifically referenced in the ALJ's decision does not undermine the credibility assessment, given the [other] substantial evidence . . . .").

Here, the ALJ discussed Plaintiff's work history in detail during the administrative hearing (Tr. at 50, 64-68) and in connection with her finding that Plaintiff could perform her past relevant work (Tr. at 24). Moreover, as discussed above, the ALJ here also considered significant additional evidence relevant to an assessment of Plaintiff's subjective symptoms. To the extent Plaintiff is contending that her work history should entitle her subjective complaints to substantial credibility, neither the Fourth Circuit nor any court within it has recognized this type of "enhanced credibility." In rejecting a claim similar to Plaintiff's, another district court within the Fourth Circuit reasoned as follows:

> [C]redibility determinations are ultimately for the ALJ to make based on the objective medical findings, the evidence of record, and Claimant's testimony and conduct at the administrative hearing. Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir.1984). The requirement that the ALJ make a credibility determination based on these factors would be meaningless if a long work history standing alone established "substantial credibility."

Jeffries v. Astrue, No. 3:10–cv–1405, 2012 WL 314156, at *25 (S.D.W.Va. Feb., 1, 2012); see also McKeithan v. Colvin, No. 1:14CV688, 2015 WL 4493132 (M.D.N.C. July 23, 2015). Accordingly, the ALJ in the present case did not err by failing to apply an "enhanced credibility" doctrine in this case. Rather, substantial evidence supports the ALJ's credibility determination, which was based on the record as a whole.

Ultimately, the ALJ made a determination regarding Plaintiff's symptoms after considering Plaintiff's testimony and the applicable factors at length. The ALJ's discussion clearly takes into account Plaintiff's "medical history, medical signs, and laboratory findings" as well as the factors set out in 20 C.F.R. § 404.1529(c)(3), such as the extent of Plaintiff's treatments and her daily activities. Plaintiff has not shown how this symptom evaluation was improper or how the ALJ's determination was unsupported by substantial evidence.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #10] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #12] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 23rd day of April, 2019.

_/s/ Joi Elizabeth Peake_
United States Magistrate Judge
